UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VALERIE L. HAMMOND,

                                        **REPORT AND**
                                        **RECOMMENDATION**

                Plaintiff,

                                           12-CV-965
                                           (TJM/VEB)
      V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                Defendant.
_____

# I. INTRODUCTION

In July of 2010, Plaintiff Valerie Hammond applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since May of 2010 due to physical and emotional impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorney, Peter M. Margolius, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

# II. BACKGROUND

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

The relevant procedural history may be summarized as follows: Plaintiff applied for SSI benefits and DIB on July 27, 2010, alleging disability beginning on May 6, 2010. (T at 106-109, 110-116).[2] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 29, 2011, in Albany, New York before ALJ Dale Black-Pennington. (T at 30). Plaintiff, represented by counsel, appeared and testified. (T at 34-52). On September 23, 2011, ALJ Black-Pennington issued a written decision denying Plaintiff's applications. (T at 16-29). The ALJ's decision became the Commissioner's final decision on May 4, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, through counsel, timely commenced this action on June 14, 2012. (Docket No. 1). The Commissioner interposed an Answer on October 1, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on November 14, 2012. (Docket No. 10). The Commissioner filed a Brief in opposition on February 21, 2013. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and that this case be dismissed.

## III. DISCUSSION

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different

result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

    **1.     Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (May 6, 2010) and met the insured status requirements of the Social Security Act through December 31, 2014. (T at 21). The ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment. (T at 21). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 22).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 CFR § 404.1567 (a) and 416.967 (a). (T at 22-24). The ALJ concluded that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (T at 23).

The ALJ found that Plaintiff was unable to perform her past relevant work as a certified nursing assistant. (T at 24).

Considering Plaintiff's age (39 years old on the alleged onset date), education (high

5

school), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 25). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (May 6, 2010) to the date of her decision (September 23, 2011). (T at 25-26).

As noted above, the ALJ's decision became the Commissioner's final decision on May 4, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position. First, Plaintiff contends that the Appeals Council should have remanded based on new evidence. Second, she argues that the ALJ's RFC determination is not supported by substantial evidence. Third, Plaintiff argues that the ALJ did not give adequate consideration to medication side effects. This Court will address each argument in turn.

#### a. Appeals Council

Under the Social Security Act, a claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." 20 C.F.R. §§ 404.970, 416.1470; see also Perez v. Chater, 77 F.3d 41, 44 (2d Cir.1996). To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F. Supp.2d 194, 204

(E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F. Supp.2d 297, 302 (D. Conn.2009).

Plaintiff submitted evidence from Northeast Orthopaedics to the Appeals Council. According to the additional medical records, Plaintiff presented to Dr. John Whalen, her treating physician, in October of 2011 with complaints of neck pain, which she reported began following a motor vehicle accident in July of 2005. (T at 355). Plaintiff had noticed an increase in neck pain since August of 2011, as she increased her activity level following previous back surgery.[5] (T at 355). Her symptoms were described as "tingling pain as well as an ache and burning sensation," with some periods of dizziness and lightheadedness. (T at 355). Dr. Whalen diagnosed cervical spondylosis and recommended physical therapy and an MRI. (T at 356). Following an MRI and flexion and extension cervical radiographs, Dr. Whalen confirmed advanced spondylosis at C5-6 and small central disk bulge or protrusion at C6-7. (T at 351). He recommended surgery and Plaintiff consented. (T at 352).

On November 2, 2011, Dr. Whalen performed an anterior cervical discectomy and

---

[5] Plaintiff's back pain was the result of a 2005 lifting injury at work. (T at 248). She had surgery to address low back pain in November of 2010. (T at 355). The alleged neck pain appears to arise from an unrelated 2005 motor vehicle accident. (T at 355).

decompression C5-6, an anterior cervical fusion C5-6, anterior instrumentation C5-6; and vein repair. (T at 343). In a December 2011 post-operative treatment note, Dr. Whalen described Plaintiff as "doing reasonably well," with "some pain" in the posterior aspect of her shoulder and "some cramping" in the hand with writing, but no "shooting pain" in her arm. (T at 340).

The Appeals Council indicated that had considered this new evidence, but found it did not provide a basis for changing the ALJ's decision. (T at 1-2, 4). Plaintiff challenges the Appeals Council's finding, arguing that the new evidence concerning Plaintiff's neck pain provided a basis for revisiting the ALJ's decision.

This Court finds no reversible error in the Appeals Council's conclusion. Plaintiff did not allege a neck impairment in her application for benefits. (T at 141). During the administrative hearing, Plaintiff testified that she had been having problems with her neck "for the last few weeks." (T at 40). Dr. Whalen reported that Plaintiff had been treated only once in five (5) years for neck pain. (T at 355). Although Plaintiff reported increased neck pain in August of 2011 and was examined by Dr. Whalen in October of that year, there is no evidence that Plaintiff's neck pain was disabling (either alone or in combination with Plaintiff's other impairments) during the period prior to the ALJ's decision, which was rendered on September 23, 2011.

It is also not clear that Plaintiff's neck condition would satisfy the Social Security Regulations' durational requirement even with respect to the period after the ALJ's decision. Dr. Whalen reported that Plaintiff was "doing reasonably well postoperatively" and indicated that he would keep her "out of work until her next visit in a couple of months . . . ." (T at 340). See 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is

expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Accordingly, the Appeals Council reasonably concluded that the additional evidence did not provide a basis for changing the ALJ's decision.

### b. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ determined that Plaintiff retained the RFC to lift/carry 20 pounds occasionally and 5 to 10 pounds frequently; occasionally push/pull no more than 10 pounds; walk in 1-hour intervals up to a total of 2 hours in an 8-hour workday; stand with the ability to move about for intervals up to 1 hour for a maximum of 2 hours in an 8-hour workday, and sit in 45 minute intervals with the ability to move about for up to 6 hours in an 8-hour workday. (T at 22-23). The ALJ found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl. (T at 23).

9

The ALJ afforded controlling weight to an opinion provided Dr. Whalen, Plaintiff's treating physician. (T at 23). Plaintiff agrees with the ALJ that Dr. Whalen's opinion was entitled to controlling weight,[6] but contends that Dr. Whalen's opinion was actually more restrictive that the ALJ's RFC assessment. For example, in May of 2011, Dr. Whalen opined that Plaintiff was restricted to lifting no more than 10 pounds. (T at 305). The ALJ concluded that Plaintiff could lift/carry 20 pounds occasionally. (T at 305). Dr. Whalen found that Plaintiff could not sit without changing positions for more than 30 to 45 minutes. (T at 305). The ALJ determined that Plaintiff could sit for 45 minute intervals. (T at 22). Dr. Whalen opined that Plaintiff had a "total temporary disability" (T at 305), while the ALJ concluded that Plaintiff could perform the full range of sedentary work. (T at 22).

This Court finds Plaintiff's argument unavailing. The ALJ afforded Dr. Whalen's opinion "controlling weight" and incorporated his limitations into the RFC determination. (T at 23). This does not mean the ALJ was obliged to adopt Dr. Whalen's opinion in each and every one of its particulars. The RFC determination is supported by and generally consistent with Dr. Whalen's opinion and the other evidence of record. This is sufficient to sustain the ALJ's assessment under the deferential standard of review applicable here. See

---

[6]Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).
Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)("On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.")(quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)).

The ALJ's conclusion that Plaintiff could lift 20 pounds occasionally was supported by Plaintiff's own testimony, wherein she testified that she can lift that much weight. (T at 39). Moreover, sedentary work only requires lifting 10 pounds. See 20 CFR § 404.1567 (a). As such, the RFC determination could still be sustained even if the ALJ adopted Dr. Whalen's more restrictive finding. Dr. Amelita Balagtas, an orthopedic consultative examiner, assessed "moderate limitations" with regard to lifting, which is consistent with the ALJ's conclusion and provides further support for the RFC determination.[7] (T at 250).

The ALJ's conclusion that Plaintiff could sit for 45 minute intervals without changing positions is generally consistent with Dr. Whalen's 30-45 minute assessment (T at 305). It is also supported by Dr. Balagtas's conclusion that Plaintiff had a "moderate" limitation as to prolonged sitting (T at 250). Plaintiff's testimony regarding her activities of daily living, which included car rides and other activities (e.g. church attendance) involving prolonged sitting, provides further support for the ALJ's determination. (T at 40, 46, 49). See Proper v. Astrue, 10-CV-1221, 2012 WL 1085812, at *14 (N.D.N.Y. Feb. 28, 2012) ("The regulations do not mandate the presumption that all sedentary jobs in the United States

---

[7]An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight.")(quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2008)).

With regard to Dr. Whalen's assessment of "total temporary disability" (T at 305), that opinion was rendered in the worker's compensation context, which relies on different standards than those applied to applications for Social Security benefits. See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y.1994); see also Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [claimant's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act"). Moreover, the disability determination is ultimately reserved to the Commissioner. 20 C.F.R. § 404.1527(e); SSR 96-5p.

In sum, this Court does not find any material conflict between Dr. Whalen's assessment and the RFC determination. To the extent the ALJ's RFC finding is arguably less restrictive than Dr. Whalen's opinion, the assessment made by the ALJ after weighing the medical evidence is supported by substantial evidence and must therefore be sustained. See White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008)("Conflicts in evidence . . . are for the Commissioner to resolve.")(citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

### c. Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that her pain medication (Flexeril) causes side effects, including drowsiness and "fogginess," which makes it difficult to concentrate, and blurred vision. (T at 40, 41-42).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully credible.

14

(T at 24). Plaintiff challenges the ALJ's credibility determination, arguing that greater consideration should have been given to her medication side effects.

However, "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). As discussed above, the ALJ's RFC determination was supported by the opinions of Plaintiff's treating physician, the orthopedic consultative examiner, and Plaintiff's activities of daily living. Plaintiff has not pointed to any evidence (other than her subjective complaints) to substantiate her claim of significant side effects. The contemporaneous treatment notes do not document any complaints or treatment regarding such side effects. In fact, following her back surgery in 2010, Plaintiff was described as taking Flexeril

"occasionally" and "doing reasonably well" albeit with ongoing complaints of back pain. (T at 315, 317, 322). Plaintiff reported using Flexeril to Dr. Balagtas, the consultative examiner, but did not complain of side effects. (T at 248).

There is no question that Plaintiff lives with pain , as the record documents frequent complaints and treatment. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A). For the foregoing reasons, this Court finds that the ALJ's credibility assessment is supported by substantial evidence and should be sustained.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating provider and the consultative examiner and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

Dated: July 10, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

17

1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 10, 2013

Victor E. Bianchini
United States Magistrate Judge